**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TINA COLLINS and** | : | **CIVIL ACTION** |
| **GLENDALE WALKER** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PHELAN HALLINAN DIAMOND** | : | |
| **& JONES, LLP** | : | **NO. 17-3727** |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                                          **March 1, 2018**

This action brought under the Fair Debt Collection Practices Act (FDCPA) arises out of a mortgage foreclosure. The central question is whether a law firm bringing a foreclosure action must comply with the requirements of the FDCPA. We conclude that it must.

The defendant law firm, Phelan Hallinan Diamond & Jones, LLP (Phelan), filed a foreclosure complaint in state court against the plaintiffs before providing them with verification of the mortgage debt. Because foreclosure constitutes debt collection activity under the FDCPA, we must deny the motion to dismiss to the extent the complaint alleges a violation of 15 U.S.C. § 1692g(b) for Phelan's failing to "cease all collection activity" before verifying the debt once the debtor disputes it. The remaining claims are meritless and the plaintiffs' allegations do not show they have a plausible claim for relief.

**Background**

The plaintiffs allege that Phelan's communications attempting to collect a debt violated the FDCPA, specifically 15 U.S.C. §§ 1692e(2)(A), (5), (10), and 1692j(a). According to the plaintiffs, Phelan sent them a "dunning communication in October

2016" notifying them of the impending foreclosure.[1]  On October 26, 2016, in response, the plaintiffs sent Phelan a notice of dispute, requesting verification of the alleged debt.[2]  On October 30, 2016, before responding to the plaintiffs, Phelan filed a foreclosure complaint against them.[3]  The foreclosure complaint was served on November 3, 2016.[4]  Phelan responded to the notice of dispute on November 28, 2016, explaining that the amounts due arose from plaintiffs' default and the subsequent acceleration of the mortgage balance.[5]

## Standard of Review

A Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint.  In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  The plaintiff must allege

---

[1] The record does not contain the dunning letter.

[2] Compl. ¶ 39; *id.*, Ex. C, Notice of Dispute, Oct. 26, 2016 (Doc. No. 4-1) at ECF 5.  The complaint states that the notice of dispute was dated October 28, but the letter itself states October 26.

[3] Compl. Ex. B, Foreclosure Compl., No. 161004191 (Pa. C.P. Ct. Phila. Cty.) (Doc. No. 4) (Foreclosure Compl.) at ECF 16–22.

[4] Compl. ¶ 16.

[5] *Id.* ¶ 41; *id.*, Ex. D, Verification Letter, Nov. 28, 2016 (Doc. No. 4-1) (Verification Letter) at ECF 10.  The complaint states that Phelan's verification was dated November 29, 2016, but the letter itself states November 28.

facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then, we determine whether the facts alleged, if proven, show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

All well-pleaded allegations of the complaint must be accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences must be drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

A court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents to the extent the plaintiff's claims are based upon them. *Hartig Drug Co., Inc. v. Senju Pharm. Co., Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016) (*citing Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

### Analysis

The plaintiffs allege that the foreclosure complaint and Phelan's response to their notice of dispute "contained false and misleading representations thru [sic] deceptive means in an attempt to collect a debt."[6] They also claim that Phelan, without verifying the debt, threatened to proceed with the foreclosure action.[7] They contend that Phelan

---

[6] Compl. ¶¶ 34, 59.

[7] *E.g.*, *id.* ¶ 107.

falsely represented itself as attorneys for Wells Fargo, leading them to believe that Phelan was a part of Wells Fargo's legal department.[8]  The plaintiffs also contend that Phelan failed to validate and verify the debt.[9]

The plaintiffs plead several violations of the FDCPA.  They state, in conclusory fashion, that Phelan made:

- "false representation[s] of the character, amount, or legal status of [their] debt," 15 U.S.C. § 1692e(2)(A),

- a "threat to take any action that cannot legally be taken or that is not intended to be taken," *id.* § 1692e(5),

- a "use of . . . false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning [them]," *id.* § 1692e(10),

- or a form "used to create the false belief in a consumer that a person other than the creditor . . . is participating in the collection of or in an attempt to collect a debt . . . allegedly owe[d to the] creditor, when in fact such person is not so participating."  *Id.* § 1692j(a).

Moving to dismiss the complaint, Phelan argues that the foreclosure complaint and its response to the plaintiffs' notice of dispute were neither false, misleading, nor deceptive, even from the perspective of the least sophisticated debtor.[10]  Phelan

---

[8] *Id.* ¶¶ 79–80, 83.

[9] *E.g., id.* ¶¶ 50, 105.

[10] Mot. to Dismiss at 5, ECF 9 (citing *Wilson v. Quadramed Corp.*,  225 F.3d 350, 354–55 (3d Cir. 2000) ("[A]lthough this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.' " (quoting *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996))).

contends that in all its communications with the plaintiffs, it was clear the law firm represented Wells Fargo in the foreclosure action.

We agree. Based upon the allegations in the complaint, there were no misrepresentations regarding the identities of the debt collector and the creditor.

The foreclosure complaint clearly states that the Phelan firm was representing Wells Fargo in the foreclosure action.[11] Indeed, the complaint in this action concedes that Phelan "commenced a State Court in rem mortgage foreclosure action against Plaintiff[s] *on behalf of* WELLS FARGO BANK, N.A."[12] There is no basis for believing Phelan claimed or appeared to be employed by the Wells Fargo legal department. Nor does it matter. The complaint makes clear that the plaintiffs knew that the creditor was Wells Fargo.

Nothing in Phelan's communications to the plaintiffs could be reasonably construed as false or misleading. Nor were the communications threats of legal action that could not be taken. Wells Fargo filed the foreclosure action in state court only after the plaintiffs had defaulted on the mortgage, triggering Wells Fargo's right to foreclose on the property held by the mortgage.[13]

The plaintiffs do not address Phelan's arguments in their response to the motion to dismiss. Instead, they argue that the complaint states a cause of action under section 1692g(b), regarding notice to the debtor advising him of his right to dispute the

---

[11] *See, e.g.*, Foreclosure Compl. at ECF 16–22 (on the case caption immediately to the right of Phelan's name and address, as well as immediately below the complaint's signature line listing a Phelan attorney, it states "Attorney for Plaintiff").

[12] Compl. ¶ 15 (emphasis added).

[13] Foreclosure Compl. Ex. C, Notice of Intention to Foreclose on Mortgage, July 5, 2016 (Doc. No. 4) at ECF 30, 33 (noting the mortgage is in default because of failure to make monthly payments).

validity of the debt and how to do so.[14]  Although the claims are not styled under section 1692g(b), the substantive allegations address section 1692g(b)'s verification requirements.[15]   For example, the plaintiffs allege that Phelan "commenced the mortgage action without providing verification of the alleged debt."[16]  Accordingly, we consider the plaintiffs' allegations regarding verification.

The plaintiffs argue that after they disputed the debt, Phelan did not cease collection efforts until it provided verification of the debt.[17]  Under section 1692g(b):

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt . . . is disputed, . . . **the debt collector shall cease collection of the debt, . . . until the debt collector obtains verification of the debt** . . . and a copy of such verification . . . is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b) (emphasis added).

This provision requires a debt collector, when the consumer disputes the debt, to provide the consumer with notice of how and when the debt was originally incurred.  It is sufficient to inform her of the amount of the debt, the services provided, and the date on which the debt was incurred.  *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991).  "This information does not have to be extensive.  It should provide the date and nature of the transaction that led to the debt."  *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 784–86 (6th Cir. 2014) (citing *Graziano*, 950 F.2d at 113).

---

[14]  Even though the complaint is not styled under section 1692g(b), in its motion to dismiss, Phelan anticipates that the plaintiffs will nonetheless pursue this claim based on the substantive averments in their complaint.  Phelan addresses the nature of the foreclosure action as an *in rem* action, an argument raised to dispute that the filing of the foreclosure complaint constituted "debt collection" activity in violation of section 1692g(b).  *See* Mot. to Dismiss at 6–8, ECF 10–12.

[15]  *See, e.g.*, Compl. ¶¶ 17–18, 28–32, 40, 44–45, 49, 51–52, 56, 71, 82, 84–87, 95, 99–100, 104–105, 107, 111–12, 114.

[16]  *Id.* ¶ 28.

[17]  Resp. to Mot. to Dismiss (Doc. No. 9) at 3, ECF 7 (quoting 15 U.S.C. § 1692g(b)).

In a written letter, Phelan provided the plaintiffs with notice of how and when the debt was originally incurred, indicating that "[t]hese amounts are due because of the default and the subsequent acceleration of the debt, as allowed by your loan documents."[18]  Copies of the mortgage, assignment, note, loan modification agreement, and payment history were attached to the verification letter.[19]  Thus, Phelan's response to the notice of dispute sent to the plaintiffs on November 28, 2016, adequately verified the debt.

It is what happened before Phelan sent the verification letter and after the plaintiffs notified Phelan that they disputed the debt that forms the basis for a viable claim for a violation of the FDCPA.  When the consumer notifies the debt collector that the debt is disputed, section 1692g(b) requires the debt collector to "cease collection of the debt" until verification is provided to the consumer.  Here, according to the complaint, after Phelan threatened to foreclose on the mortgage, the plaintiffs sent a notice of dispute.  Instead of ceasing collection activity, Phelan proceeded to file the foreclosure action.  Consequently, the remaining question is whether foreclosing on a mortgage constitutes debt collection activity for purposes of the FDCPA.

Foreclosure proceedings are deemed debt collection activity.  *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 179 (3d Cir. 2015) (citing 15 U.S.C. § 1692i; *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013)) ("[F]oreclosure meets the broad definition of 'debt collection' under the FDCPA.").  Foreclosure, although legal in nature,

---

[18] Verification Letter at ECF 10.

[19] *Id.*

is "activity undertaken for the general purpose of inducing payment." *Id.* (quoting *McLaughlin*, 756 F.3d at 245). A debt collector cannot avoid FDCPA liability simply by proceeding *in rem* rather than *in personam*. *Id.* Therefore, for purposes of this action, Phelan was acting as a debt collector and engaged in debt collection activity when it communicated with the plaintiffs and filed the foreclosure action.

## Conclusion

Viewing the allegations in the light most favorable to the plaintiffs, they have failed to allege any facts that would establish violations of 15 U.S.C. §§ 1692e(2)(A), (5), (10), or 1692j(a). Indeed, their own allegations militate against any finding of liability for those purported violations. The allegation that Phelan filed the foreclosure complaint before verifying the debt in response to the dispute notice states a cause of action for a violation of section 1692g(b). Thus, we shall deny the motion to dismiss the complaint only to the extent it avers a violation of 15 U.S.C. § 1692g(b).[20]

---

[20] If the plaintiffs succeed in establishing Phelan's liability for violating section 1692g(b), their damages are limited to $1,000. *See* 15 U.S.C. § 1692k(a)(2)(A).